# NO. 12-09-00309-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TRACEY ESCUE,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 159TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Tracey Escue appeals his conviction for two counts of intoxication assault. Appellant raises six issues on appeal. We affirm.

### BACKGROUND

Appellant was charged by indictment with two counts of intoxication assault. Appellant pleaded not guilty to both counts. After a bench trial on guilt, the trial court found Appellant guilty of the charged offenses. The trial court subsequently assessed Appellant's punishment at six years of imprisonment for each count. Appellant filed a motion for new trial, which was denied by operation of law. This appeal followed.

### EVIDENTIARY SUFFICIENCY

In his first, second, third, and fourth issues, Appellant challenges the legal and factual sufficiency of the evidence that his victims suffered serious bodily injury.

**Standard of Review**

Evidence is legally insufficient when an appellate court, viewing the evidence in the light most favorable to the judgment, determines that a rational trier of fact could not have found the essential elements of the offense beyond a reasonable doubt. ***Johnson v. State***, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) (citing ***Jackson v. Virginia***, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). We must bear in mind that the factfinder is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony. *See **Barnes v. State***, 876 S.W.2d 316, 321 (Tex. Crim. App.

1994). The factfinder is entitled to draw reasonable inferences from the evidence. *See Dudley v. State*, 205 S.W.3d 82, 86-87 (Tex. App.—Tyler 2006, no pet.). Likewise, the reconciliation of conflicts in the evidence is within the exclusive province of the factfinder. *See Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).

Evidence is factually insufficient "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust." *Ortiz v. State*, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002). A clearly wrong and manifestly unjust verdict occurs where the finding of guilt "shocks the conscience" or "clearly demonstrates bias." *Zuniga v. State*, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004). In conducting a factual sufficiency review of the evidence, we consider all of the evidence weighed by the factfinder that tends to prove the existence of the fact in dispute and compare it to the evidence that tends to disprove that fact. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Although we are authorized to disagree with the factfinder's determination, even if probative evidence exists that supports the determination, *see Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996), our evaluation should not substantially intrude upon the factfinder's role as the sole judge of the weight and credibility of witness testimony. *See Santellan*, 939 S.W.2d at 164. Where there is conflicting evidence, the factfinder's determination on such matters is generally regarded as conclusive. *See Dudley*, 205 S.W.3d at 89.

## Discussion

The two counts against Appellant respectively involved two victims, Jennifer Morgan and Laurie Sayre. It is uncontested that Appellant drove his car into an ambulance, causing injuries to Morgan and Sayre, employees of the ambulance service. However, Appellant challenges the sufficiency of the evidence that Morgan and Sayre suffered serious bodily injury, as required under the intoxication assault statute. *See* TEX. PENAL CODE ANN. § 49.07(b) (Vernon Supp. 2009). According to the statute, "serious bodily injury" means "injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *Id.*

### *Morgan*

At trial, Morgan testified as to her injuries. The State also introduced medical records from her initial treatment following the wreck. Morgan testified that she was first

diagnosed with a cut finger and a sprained shoulder. As a result, she missed fourteen days of work. She was subsequently diagnosed with six bulging discs in her neck and back. She was eventually forced to cease work as an emergency medical technician because she was no longer able to endure the lifting requirements. At the time of trial, almost three years after the wreck, she still had trouble sleeping and laying down and was unable to sit for more than thirty-five to forty-five minutes at a time. And, while standing, her arms and feet still tended to lose feeling. Appellant points out that the medical records from Morgan's initial treatment contradict her testimony regarding the extent of her injuries. However, we note that Morgan's injuries appear from the evidence to have progressively worsened after the wreck.

*Sayre*

Sayre also testified as to her injuries, and the State introduced medical records from her initial treatment. Sayre testified that she suffered a broken finger, a separated shoulder, and a pinched nerve in her back. As a result of the shoulder injury, she required two months of physical therapy. She testified that she still suffered from shoulder problems despite the therapy. The broken finger healed after two weeks. But as a result of the pinched nerve, she continues, almost three years later, to have numbness in three fingers in one hand. Sayre also suffers from continuing back and shoulder pain, requiring medication. As a result of her injuries, she was unable to maintain employment as a paramedic because she could not perform the lifting requirements. As with Morgan, Appellant points out that the medical records from Sayre's initial treatment contradict her testimony regarding the extent of her injuries. However, we note that Sayre's injuries appear from the evidence to have progressively worsened after the wreck.

## Conclusion

Viewing the evidence in the light most favorable to the judgment, and giving due deference to the factfinder, we hold that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Johnson***, 871 S.W.2d at 186. Further, after considering all of the evidence, we hold that the evidence supporting guilt was not so obviously weak, or the contrary evidence so strong, as to render the conviction clearly wrong or manifestly unjust. *See **Ortiz***, 93 S.W.3d at 87. In short, the evidence was legally and factually sufficient for the trial court to find that Morgan and Sayre suffered an "injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function

3

of any bodily member or organ." *See* TEX. PENAL CODE ANN. § 49.07(b). Therefore, we overrule Appellant's first, second, third, and fourth issues.

<b>CHAIN OF CUSTODY</b>

In his fifth issue, Appellant asserts that "the trial court abused its discretion in overruling the chain of custody objection and admitting State's Exhibit Number 6 into evidence." Exhibit 6 is a blood sample analysis report, showing that the sample contained .11 grams of alcohol per 100 milliliters. At trial, the officer who witnessed the blood being drawn testified that he did not remember what the test subject from whom the blood was drawn looked like. Consequently, the officer was unable to identify Appellant as the person from whom the blood was drawn. Therefore, Appellant complains that, "[i]n the present case, the State did not meet the threshold requirement of proving the beginning of the chain of custody."

**Standard of Review**

An appellate court reviewing a trial court's ruling on the admissibility of evidence must utilize an abuse of discretion standard of review. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). "In other words, the appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Id.* In addition, the appellate court must review the trial court's ruling in light of what was before the trial court at the time the ruling was made. *Id.*

**Discussion**

The State offered Exhibit 6 after the testimony of Trooper Robert Johnson of the Texas Department of Public Safety ("DPS"). Trooper Johnson testified that he was instructed by DPS Communications to travel to East Texas Medical Center ("ETMC") in Tyler, Texas in order for a blood sample to be collected from Appellant. He stated that he arrived at ETMC and asked the staff to identify "Tracey Escue." A staff member pointed him to an individual. While Trooper Johnson watched, blood was drawn from that individual. Trooper Johnson took possession of the blood sample, did the appropriate "paperwork," and delivered the sample to the crime lab. Trooper Johnson testified that he could not remember what the individual from whom the blood was drawn looked like. And the evidence before the trial court reflected that the initial investigating officer, Trooper Randall Noe, had understood that Appellant had been transported to Mother Frances Hospital in Tyler, not ETMC. Trooper Noe's report indicated that the

4

sample had been received by Trooper Johnson at Mother Frances. But Trooper Johnson explained this confusion in his testimony. He stated that Trooper Noe's report was simply incorrect. Likewise, he stated that he had been instructed by DPS Communications to go to ETMC and that it was not uncommon for medical helicopters to transport an injured person to a different hospital than initially planned. Therefore, it was possible to conclude from the evidence before the trial court that Trooper Noe had thought the helicopter was going to Mother Frances, but that a change of plans had occurred. It was also possible to conclude that Trooper Noe then prepared his report without realizing that the report reflected the wrong hospital.

In light of the evidence before us, we cannot say that there was insufficient evidence that the blood was drawn from Appellant so as to require exclusion. *See Dansby v. State*, No. 12-93-00061-CR, 1995 WL 498725, at *4-5 (Tex. App.—Tyler Aug. 23, 1995) (not designated for publication), *rev'd on other grounds*, 931 S.W.2d 297 (Tex. Crim. App. 1996) (reaching a similar conclusion). Therefore, we overrule Appellant's fifth issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his sixth issue, Appellant argues that trial counsel was ineffective because he failed to seek to examine the forensic scientist who prepared the report labeled Exhibit 6.

### Standard of Review

The standard for testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and is applicable to this appeal. *See Hernandez v. State*, 726 S.W.2d 53, 54-57 (Tex. Crim. App. 1986). To prevail on a claim of ineffective assistance, an appellant must show that his attorney's representation fell below the standard of prevailing professional norms, and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at 687-88, 694, 104 S. Ct. at 2064-65, 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*, 466 U.S. at 694, 104 S. Ct. at 2068.

"[A] defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.*, 466 U.S. at 693, 104 S. Ct. at 2052; *see Pennington v. State*, 768 S.W.2d 740, 741 (Tex. App.—Tyler 1988, no pet.). The Supreme Court "found this 'outcome determinative' standard . . . too heavy a burden on

defendants, and that its use was not appropriate." *Nealy v. Cabana*, 764 F.2d 1173, 1178 (5th Cir. 1985) (citing *Strickland*, [466 U.S. at 693-95], 104 S. Ct. at 2068-69). Instead, "[t]he result of a proceeding can be rendered unreliable . . . even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."[1] *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2052; *see Doherty v. State*, 781 S.W.2d 439, 442 (Tex. App.—Houston [1st Dist.] 1989, no pet.).

Our review of counsel's representation is highly deferential; we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. This court will not second guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course, without more, support a finding of ineffectiveness. *See id. But see Ex parte Duffy*, 607 S.W.2d 507, 526 (Tex. Crim. App. 1980) ("Surely at some point 'tactic' becomes an unsatisfactory justification for ineptness. And where silence which results in waiver of potentially reversible error in almost all respects cannot be explained by the practitioner, we are not warranted in excusing his major derelictions."). Further, a reviewing court will not find ineffectiveness by isolating any portion of counsel's representation, but will judge the claim based on the totality of the representation. *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069.

**Discussion**

Trial counsel did not require the State to present a forensic scientist in support of Exhibit 6. Instead, counsel sought to exclude the exhibit based upon chain of custody issues. Appellant asserts that trial counsel should have also required the State to present a sponsoring scientist for the exhibit, thereby allowing for examination of that witness. However, despite raising this matter in a motion for new trial and securing a hearing, Appellant failed to present testimony from such a witness. And, without more, trial

---

[1] Generally, an appellant bears the burden of proving, "by a preponderance of the evidence," that counsel was ineffective. *See, e.g., Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). However, no such showing may be required to prove the prejudice prong of *Strickland* – "that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different." *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2052 ("[A] defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case."); *see Holland v. Jackson*, 542 U.S. 649, 654-55, 124 S. Ct. 2736, 2738-39, 159 L. Ed. 2d 683 (2004). Therefore, appellate courts should not require a preponderance of the evidence in support of *Strickland's* prejudice prong. However, in relation to the first prong of *Strickland*, the unreasonable deficiency prong, appellate courts should require a preponderance of the evidence.

counsel's conduct shows nothing. *See **King v. State***, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983) ("Counsel's failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony."). As such, we cannot determine whether Appellant was prejudiced by trial counsel's failure. We overrule Appellant's sixth issue.

## DISPOSITION

We ***affirm*** the judgment of the trial court.

    **SAM GRIFFITH**
Justice

Opinion delivered August 31, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

7